UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

        Plaintiff,

v.                                                                          Case No. 15-cr-279 (JNE/TNL)
                                                                       ORDER

Feliciano Lopez-Castillo (2),

        Defendant.

This matter is before the Court on Defendant Feliciano Lopez-Castillo's ("Defendant") Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Dkt. No. 95]. Defendant challenges two searches and seizures executed pursuant to two separate search warrants: (1) "[t]he buccal (oral) DNA swab taken from Defendant pursuant to the search warrant issued by the Sherburne County District Court on December 16, 2015," and (2) "[t]he November 19, 2015, search of a 2004 Ford F150 Pickup truck VIN 1FTRX04W74KD80028, pursuant to the November 19, 2015, search warrant issued by the Mower County District Court." Def.'s Mot. 1. For the reasons set forth below, the motion is denied.

### A.    Buccal DNA Swab Search

Defendant argues that probable cause did not exist for the issuance of the December 16, 2015 search warrant, which authorized a search of Defendant by means of a buccal swab to obtain a sample of his DNA. A buccal swab for DNA is a "gentle process" that "involves but a light touch on the inside of the cheek," but "can be deemed a search within the body of the arrestee." *Maryland v. King*, 133 S.Ct. 1958, 1968-69 (2013). The application for and affidavit in support of this warrant explain that when Defendant was arrested, he was believed to be travelling in tandem with two other defendants in separate cars, and that during the traffic stops of the three cars, the authorities recovered approximately ten pounds of methamphetamine.

Significantly, the materials in support of the warrant also specify that the DNA sample sought from Defendant will be used solely "for further comparison to possible DNA that may be collected from the recovered methamphetamine and/or its packaging," which "may tend to include or exclude the individual(s) as [a] possible possessor of the recovered narcotics."

"The Fourth Amendment requires probable cause to be shown for the issuance of a warrant." *United States v. Montes-Medina*, 570 F.3d 1052, 1059 (8th Cir. 2009) (citing *United States v. Hart*, 544 F.3d 911, 914 (8th Cir. 2008)). "Where there is no evidentiary hearing before the [issuing] judge, the probable cause determination must be based upon only the information which is found within the four corners of the affidavit." *Id.* (quoting *United States v. Hudspeth*, 525 F.3d 667, 674 (8th Cir. 2008)). Probable cause exists if, considering the totality of the circumstances, "the warrant application and affidavit describe circumstances showing 'a fair probability that contraband or evidence of a crime will be found in a particular place[.]'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Here, there is no question that the facts in the supporting affidavit for the December 16, 2015 warrant show a nexus between Defendant and the item(s) from which the officers intended to take a comparison DNA sample. As stated in the affidavit, the police sought to test Defendant's DNA against any DNA found on the methamphetamine or its packaging that was recovered during the traffic stops incident to Defendant's arrest. Defendant does not argue that this nexus is insufficient.

Rather, Defendant argues that the warrant is defective solely because the affidavit does not state that the police had yet recovered any DNA from the methamphetamine or its packaging against which Defendant's DNA would be tested. He argues that "a warrant to obtain a buccal DNA swab must allege[] the existence of a comparison sample that has actually been recovered from the contraband." Def.'s Mot. 2 (citing *United States v. Myers*, 14CR135 (ADM/LIB), 2014

WL 3384697, at *8 (D. Minn. July 10, 2014), and *United States v. Marshall*, 11CR381(A)(M), 2012 WL 2994020, at *2-3 (W.D.N.Y. July 20, 2012)).

The Court questions whether the cited decisions are compelling authority for the point Defendant advances, particularly in light of the *King* decision. *King* held that law enforcement authorities have the right to swab arrestees without a warrant as part of the routine booking process, relying in part on an arrestee's decreased expectations of privacy and freedom from police scrutiny and on the "minimal intrusion" imposed by a buccal swab. 133 S.Ct. at 1970, 1978-79. The Supreme Court also emphasized that the tests that were run with the DNA "d[id] not reveal the genetic traits of the arrestee" and were analyzed "for the sole purpose of generating a unique identifying number against which future samples may be matched." *Id.* at 1979. In this case, as the affidavit indicates, Defendant had been arrested and was incarcerated at the time the warrant issued and was executed. Defendant, like the arrestees in *King*, had reduced expectations of privacy while in police custody. The purpose of the swab was limited to identification. As the Supreme Court noted in *King*, identification does not raise the more significant privacy concerns of, say, analyzing DNA for medical information. *See id.*

Furthermore, and crucial to the Court's analysis, the police did obtain a warrant in this case. As noted above, Defendant does not dispute that the affidavit in support of that warrant stated facts showing a connection between Defendant and the specific items against which his DNA sample would be compared. The Court need not decide, however, whether the December 16, 2015 search warrant was supported by probable cause, because the good faith exception under *United States v. Leon*, 468 U.S. 897 (1984), defeats Defendant's motion to exclude evidence obtained from the execution of that warrant.

"Under *Leon*, the exclusionary rule is not to be 'applied to exclude the use of evidence

obtained by officers acting in reasonable reliance on a detached and neutral [ ] judge's determination of probable cause in the issuance of a search warrant that is ultimately found to be invalid.'" *United States v. Keeled*, 589 F.3d 940, 944 (8th Cir. 2009) (quoting *United States v. Taylor*, 119 F.3d 625, 629 (8th Cir. 1997)). The warrant was based on facts showing a connection between Defendant and the methamphetamine and packaging against which his DNA would be compared, and it is obvious that Defendant's DNA would be found in the "search" of his mouth. The mere fact that the supporting affidavit did not assert that the comparison DNA had yet been obtained from the methamphetamine or packaging did not render the warrant facially invalid or make it unreasonable for an officer to rely on it. It would be entirely reasonable for an officer to believe that the Fourth Amendment did not rigidly require laboratory tests confirming the presence of testable DNA before a buccal swab could be obtained for comparison. As explained above, the authority for Defendant's argument is hardly free from doubt, especially in light of *King*, and the rationale of *King* supports the reasonableness of an officer's reliance on this warrant, signed by a judge, to take a minimally invasive swab of an arrestee for identification purposes.[1] Indeed, even in *Myers*, the district court reached the same conclusion and denied the motion to suppress on *Leon* grounds. 2014 WL 3384697, at *7-8. Moreover, there is no indication, nor argument, that the issuing judge was not neutral. *Keeled*, 589 F.3d at 944; *see also United States v. Hudson*, 14CR206(2)(JNE/JJK), 2014 WL 4348241, at *3 (D. Minn. Sept. 2, 2014) (Ericksen, J.). For these reasons, *Leon* applies.

**B.     Ford F150 Pickup Search**

Defendant also argues that "[p]olice lacked probable cause to search the Ford F150

---

[1] The dissent in *King* worried that the opinion would open the door to using DNA analysis for unfounded investigations of unsolved crimes. *See* 133 S.Ct. at 1982, 1989 (Scalia, J., dissenting). That concern is not present here, where the authorities sought Defendant's DNA sample to test against specific items connected to the crime for which he had been arrested.

pickup on November 19, 2015, because the warrant application did not provide a sufficient nexus between the vehicle and the alleged drug trafficking activity," and seeks to suppress evidence obtained as a result of the search executing that warrant. Def.'s Mot. 3. He asserts that the facts recited in the supporting affidavit are "vague" and "non-specific." *Id.*

It is true that "there must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue." *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000) (citation omitted). But probable cause requires only "a 'fair probability that contraband or evidence of a crime will be found in a particular place' given the circumstances set forth in the affidavit." *Id.* at 549 (citing *United States v. Horn*, 187 F.3d 781, 785 (8th Cir. 1999)); *see also Montes-Medina*, 570 F.3d at 1059. "When reviewing the sufficiency of an affidavit to support probable cause, we consider the 'totality of the circumstances.'" *United States v. Augustine*, 663 F.3d 367, 372 (8th Cir. 2011) (quoting *United States v. Searcy*, 181 F.3d 975, 981 (8th Cir. 1999)). "The affidavit for a search warrant should be examined using a common sense approach, and not a hypertechnical one." *Hudspeth*, 525 F.3d at 674.

Here, viewing the totality of the circumstances set forth in the affidavit, the Court cannot agree that the warrant lacked probable cause. The officer who signed the affidavit certified that he was "trained in the investigation of controlled substances, and the dealing and trafficking of controlled substances." The affidavit also included a fairly comprehensive history leading up to the request to search the truck. It stated that on September 16, 2015, the detective, working with the Drug Enforcement Administration ("DEA"), executed a search of a residence that Defendant rented in Sargeant, Minnesota, as part of a "buy bust operation" involving ten pounds of methamphetamine, resulting in Defendant's arrest. Police recovered approximately 1.5 pounds of methamphetamine, over $17,000 in cash, a handgun, and a set of car keys during the search of

Defendant's residence. During the searches executed that day, police found dryer sheets "as items used in the original packaging of methamphetamine that was sold during the buy bust." In a second, later search of Defendant's residence, police recovered approximately $18,000 additional cash. The officer was also told by DEA task members that they had been informed that "substantially more money" relating to Defendant and his co-defendants was hidden, and that "credible information had been received" that the group of which Defendant allegedly was a part "had acquired and used vehicles with hidden compartments to transport methamphetamine from California to Minnesota and return large amounts of cash back to California . . . ." Moreover, Defendant rented the residence from a farm operator, who was also his employer. The farm operator told the police that he found an unknown black Ford F150 pickup hidden in a barn on one of his other farm properties, and that he was informed by some of his employees that Defendant "had placed the truck in the barn." At the farm operator's request, the police impounded the car. The officer used the car keys that had been recovered from Defendant's residence to try to unlock the impounded truck, and one of the keys worked. While standing outside the truck to try the keys, the officer observed "that the vehicle had a strong odor of dryer sheets." Without opening the door, the officer then sought the search warrant in question here.

    Viewed cumulatively and with common sense, the facts recited in the affidavit establish probable cause. Given the recovered items, which included a large quantity of methamphetamine and cash, from the two searches of Defendant's residence; the discovery of an unknown truck on a farm owned by Defendant's employer and landlord; the farm operator's information that the truck was placed in the barn by Defendant; and that the keys recovered from Defendant's residence unlocked the truck, there was a fair probability that the police would recover from the truck the items named in the warrant, including methamphetamine and items

associated with the distribution of methamphetamine.  Further strengthening this conclusion is the fact that the officer observed a strong odor of dryer sheets outside the truck.  Given the officer's experience in the investigation of controlled substances, and his awareness that dryer sheets were used as packaging for the methamphetamine recovered incident to Defendant's arrest, he could have reasonably expected to find methamphetamine and/or related items in the truck based on these observations.

Based on the files, records, and proceedings herein, and for the reasons discussed above, IT IS ORDERED THAT:

1. Defendant Lopez-Castillo's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Dkt. No. 95] is DENIED.

Dated:  April 22, 2016

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge